## MARY JANE SKROBACZ *v.* PETER E. SWEENEY ET AL.

Superior Court, Judicial District of Danbury
File No. CV-01-0344015S

Memorandum filed October 1, 2003

*Mitchell M. Berger*, for the plaintiff.

*Loughlin, Fitzgerald, Kamp, Henrici, Molloy, Rizzo & Reed*, for the named defendant.

*Maher & Murtha*, for the defendant Judy Novachek et al.

WHITE, J. The plaintiff, Mary Jane Skrobacz, has filed a seventeen count complaint against the defendant Peter E. Sweeney, and defendants Judy Novachek, first selectwoman for the town of Bethel (town), the town and Matthew DiRago and David Bruckenthal, town police officers. Counts one through nine allege causes of action against Sweeney,[1] a managerial employee of the town, and are not the subject of the motion for summary judgment currently before the court. Count ten seeks indemnification from the town pursuant to General Statutes § 7-465 for Sweeney's negligence. Counts eleven and twelve assert claims in negligence and negligent infliction of emotional distress, respectively, against Novachek. Count thirteen asserts a claim against the town for indemnification pursuant to § 7-

---

[1] Counts one through nine allege the following causes of action: count one, breach of contract; count two, unjust enrichment; count three, resulting trust; count four, constructive trust; count five, material misrepresentation; counts six and seven, actions sounding in debt; count eight, negligence; and, count nine, negligent infliction of emotional distress.

465 for Novachek's negligence. Counts fourteen and fifteen assert claims in negligence and negligent infliction of emotional distress, respectively, against officers DiRago and Bruckenthal. Count sixteen asserts a claim for indemnification from the town pursuant to § 7-465 for the negligence of DiRago and Bruckenthal. Count seventeen asserts violations of 42 U.S.C. §§ 1983 and 1988 against DiRago, Bruckenthal and Sweeney.

Paragraphs one through forty, which are set out at the beginning of the plaintiff's complaint and are incorporated by reference in all seventeen counts, allege the following facts. A relationship between the plaintiff and Sweeney began following Sweeney's contact with the plaintiff over the Internet on June 2, 2001. Shortly thereafter, they met in person and began seeing each other on a regular basis. During the course of their relationship, they discovered they both liked classic, antique cars and car shows. Because Sweeney was having some financial difficulties, the plaintiff agreed to and did lend him $2000.

On June 30, 2001, the plaintiff and Sweeney attended a car show, at which time they agreed to purchase a 1956 Chevrolet B-210 for $15,500. The plaintiff paid for the vehicle and placed title and registration in Sweeney's name, but with the understanding that he was to garage the vehicle and that she would retain beneficial ownership with unrestricted access to it.

The plaintiff also provided Sweeney with money for car parts in the amount of $600. Toward the latter part of July, the plaintiff believed that he was losing interest in their relationship. She became worried about the condition of the car because she knew that Sweeney was not housing it in a garage and that he might not convey title and possession to her. On August 17, 2001, she drove to his cottage and, using her key to the car, drove the vehicle to her home. Sweeney filed a stolen

car report and provided the town's police department with the plaintiff's telephone number. The police contacted the plaintiff and informed her that Sweeney wanted his car returned. Irrespective of her protestations that the car was really hers, the police requested that she come to police headquarters. She brought proof of payment for the car but, nonetheless, agreed to sign a statement that she would return the vehicle to Sweeney and did so.

On July 18, 2002, Novachek, the town, DiRago and Bruckenthal (hereinafter referred to collectively as the defendants) filed an answer and asserted a special defense to counts eleven, fourteen, fifteen and seventeen. The special defense alleges that "[p]ursuant to the doctrine of qualified governmental immunity and of governmental immunity as set forth in [General Statutes] § 52-557n," the defendants are immune from liability.

On February 13, 2003, the defendants filed a motion for summary judgment on counts ten through seventeen. The defendants assert that they are entitled to summary judgment as a matter of law on count ten "as it is indisputable from the plaintiff's allegations and the facts of the case that at no time was Peter Sweeney acting within the scope of his employment and therefore the plaintiff is not entitled to relief pursuant to § 7-465." The defendants have moved for summary judgment on counts eleven, twelve, fourteen, fifteen and seventeen on the ground that the claims alleged in those counts are barred by the doctrine of governmental immunity.[2] The defendants provide as an alternate ground for summary judgment on count twelve that the plaintiff has not pleaded the essential elements for a claim of negligent infliction of emotional distress. The defendants move

[2] Although the defendants did not direct their special defense of governmental immunity to count twelve, they argue it in their memorandum of law.

for summary judgment on counts thirteen and sixteen on the ground that if summary judgment is granted as to the negligence claims alleged against Novachek, DiRago and Bruckenthal, the plaintiff's claims for indemnification pursuant to § 7-465 necessarily must fail. The memorandum of law filed in support of the defendants' motion for summary judgment is accompanied by six attachments. On March 13, 2003, the plaintiff filed a memorandum of law in opposition to the defendants' motion for summary judgment, accompanied by eleven attachments. The defendants filed a reply with five additional attachments on March 31, 2003. On May 12, 2003, the plaintiff filed an errata sheet to the memorandum of law in opposition to the motion for summary judgment.

I

DISCUSSION

"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Gould* v. *Mellick & Sexton*, 263 Conn. 140, 146, 819 A.2d 216 (2003). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Pelletier* v. *Sordoni/Skanska Construction Co.*, 264 Conn. 509, 514, 825 A.2d 72 (2003). "[S]ummary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." (Internal quotation marks omitted.) *Avon Meadow Condominium Assn., Inc.* v. *Bank of Boston Connecticut*, 50 Conn. App. 688, 693, 719 A.2d 66, cert. denied, 247 Conn. 946, 723 A.2d 320 (1998).

"In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact,

but rather to determine whether any such issues exist." *Nolan* v. *Borkowski*, 206 Conn. 495, 500, 538 A.2d 1031 (1988). "As the party moving for summary judgment, the [movant] is required to support its motion with supporting documentation, including affidavits." *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 796, 653 A.2d 122 (1995). "[T]he party opposing . . . a motion [for summary judgment] must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 252, 819 A.2d 773 (2003). "It is not enough . . . for the opposing party merely to assert the existence of . . . a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) Id., 252–53. "Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." (Internal quotation marks omitted.) *Great Country Bank* v. *Pastore*, 241 Conn. 423, 436, 696 A.2d 1254 (1997), citing Practice Book § 17-46.

## A

### Count Ten of the Complaint

The defendants move for summary judgment on count ten on the ground that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law because at no time was Sweeney acting within the scope of his employment, and, therefore, the plaintiff is not entitled to relief pursuant to § 7-465. The defendants argue that it is undisputed that Sweeney's relationship and actions with regard to dating the plaintiff as alleged in counts one, two and five through nine were romantic in nature and not within

the scope of his employment. In support of their motion, the defendants submit the following evidence: (1) sworn to and subscribed affidavits of DiRago, Bruckenthal and Novachek; (2) excerpts of an uncertified deposition of the plaintiff;[3] and (3) answers to interrogatories by the plaintiff.

The plaintiff argues in opposition that genuine issues of material fact exist as to whether Sweeney was acting within the scope and course of his employment during the time period covered by the acts complained of and whether the town ratified his actions, thereby obviating the defense of governmental immunity.[4] In her memorandum of law in opposition to the motion for summary judgment, the plaintiff counters that Sweeney's use of the cellular telephone and laptop computer supplied to him by the town, which permitted him to contact and maintain his relationship with the plaintiff, demonstrates the existence of disputed issues of material fact as to whether the acts alleged in counts one through nine were performed during the scope of his employment to find the town liable under § 7-465. The plaintiff submits the following evidence: (1) the signed and sworn affidavits of the plaintiff and Douglas F. Hanahan, an expert in the law enforcement field; (2) uncertified excerpts of depositional testimony of the plaintiff, Sweeney, Novachek, DiRago, Bruckenthal and Jeffrey W. Finch;[5] and (3) copies of e-mail from Sweeney to

---

[3] Uncertified excerpts of deposition testimony do not comply with Practice Book § 17-45, which requires "certified transcripts of testimony under oath . . . ." Therefore, this court cannot consider these documents in deciding the present motion.

[4] The court notes that the plaintiff has made no allegations in count ten that the town ratified the actions of Sweeney and is raising this issue now for the first time in opposition to the motion. The right of a plaintiff to recover is limited to the allegations made in the complaint. *Kawasaki Kisen Kaisha, Ltd.* v. *Indomar, Ltd.*, 173 Conn. 269, 272, 377 A.2d 316 (1977). This issue will not be addressed by the court.

[5] See footnote 3.

the plaintiff; (4) photographs of the 1956 Chevrolet B-210; and (5) copies of Sweeney's telephone records.

The defendants filed a reply to the plaintiff's memorandum of law in opposition to supplement their motion for summary judgment. It is accompanied with uncertified excerpts of depositions from the plaintiff, DiRago, Finch and Bruckenthal.[6]

"Section 7-465,[7] although entitled '[a]ssumption of liability for damage caused by employees,' imposes no liability upon a municipality for breach of any statutory duty of its own. . . . The obligation imposed by this statute is indemnification for the legal liability arising out of certain tortious conduct of the municipal employee. . . . The municipality's liability is derivative." (Citations omitted.) *Ahern* v. *New Haven*, 190 Conn. 77, 82, 459 A.2d 118 (1983). "A plaintiff bringing suit under . . . § 7-465 first must allege in a separate count and prove the employee's duty to the individual injured and the breach thereof. Only then may the plaintiff go on to allege and prove the [municipality's] liability by indemnification. . . . Thus, in a suit under § 7-465, any municipal liability which may attach is predicated on prior findings of individual negligence on the part

---

[6] See footnote 3.

[7] General Statutes § 7-465 provides in relevant part: "Assumption of liability for damage caused by employees . . . (a) Any town, city or borough . . . shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded . . . for physical damages to person or property . . . if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. . . . Any employee of such municipality, although excused from official duty at the time, for the purposes of this section shall be deemed to be acting in the discharge of duty when engaged in the immediate and actual performance of a public duty imposed by law. . . . Governmental immunity shall not be a defense in any action brought under this section . . . ."

of the employee and the municipality's employment relationship with that individual." (Citations omitted; internal quotation marks omitted.) *Wu* v. *Fairfield*, 204 Conn. 435, 438, 528 A.2d 364 (1987). "While § 7-465 provides an indemnity to a municipal employee from his municipal employer in the event the former suffers a judgment under certain prescribed conditions, it is quite clear that the municipality does not assume the liability in the first instance." (Internal quotation marks omitted.) *Fraser* v. *Henninger*, 173 Conn. 52, 56, 376 A.2d 406 (1977). "A claim under § 7-465 [therefore] should contain two counts, one against the agent, and the second against the municipality in indemnification." (Citation omitted.) *Caruso* v. *Milford*, 75 Conn. App. 95, 100 n.5, 815 A.2d 167, cert. denied, 263 Conn. 907, 819 A.2d 838 (2003).

The town is liable for the tortious acts of Sweeney, however, only if he was acting in the performance of his duties and within the scope of his employment. The traditional definition of "scope of employment" is: "A servant acts within the scope of employment while engaged in the service of the master, and it is not synonymous with the phrase during the period covered by his employment. . . . While a servant may be acting within the scope of his employment when his conduct is negligent, disobedient and unfaithful . . . that does not end the inquiry. Rather, the vital inquiry in this type of case is whether the servant on the occasion in question was engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of the master's business . . . . Unless [the employee] was actuated at least in part by a purpose to serve a principal, the principal is not liable." (Citations omitted; internal quotation marks omitted.) *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, 216 Conn. 200, 209–10, 579 A.2d 69 (1990).

24

In their memorandum of law, the defendants argue that the allegations contained in the complaint in counts one, two and five through nine "are bereft of facts indicating Sweeney was acting within the scope of his employment." In support of this argument, the defendants rely on the affidavit of Novachek in which she testified that Sweeney was employed by the town's department of public utilities during the time period at issue and his job responsibilities[8] included, for example, planning and scheduling department operations, establishing sewer and water budgets, instructing and training personnel, initiating purchase requisitions for equipment and submitting monthly activity logs, but not "contacting women over the Internet for the purposes of dating . . . attending car shows, or renovating antique or classic cars." The defendants also refer to an uncertified excerpt of the plaintiff's deposition in which she states that her relationship "had nothing to do with his employment with the town."

In opposition, the plaintiff argues that the town is liable for Sweeney's actions because it supplied him with both a cellular telephone and laptop computer and permitted him to use them to contact her and maintain his relationship with her that ultimately resulted in the deprivation of her property and other damages. Because the town enacted no regulations or policies governing the use of these devices, and because Sweeney was actually a town employee on call twenty-four hours a day, 365 days a year, the plaintiff claims that it is reasonable to infer that a nexus existed between his use of these devices, his duties as acting superintendent of the town's public utilities department and the allegations set forth in the complaint.

[8] Attached to the affidavit of Novachek is exhibit A, a copy of Sweeney's job description and responsibilities prior to July 1, 2001, and exhibit B, a copy of his job description and responsibilities after July 1, 2001, until January 3, 2003. Novachek attests to these copies as being fair and accurate.

This court must find, for Sweeney to have been acting within the scope of his employment, that Sweeney was motivated at least in part by a purpose to serve a principal or was executing his master's orders at the time he allegedly committed the tortious acts. The tortious acts alleged by the plaintiff are the purchase of the motor vehicle, the continued possession of it and the "stolen car" investigation initiated by Sweeney, all of which occurred while he was engaged in some service to the town. Inasmuch as the plaintiff's argument relies on mere assertions of fact about Sweeney's unfettered use of the cellular telephone and laptop computer issued by the town, the lack of rules and regulations regarding the use of these devices and that he was on call twenty-four hours a day to perform his duties for the public utilities department, those assertions are insufficient to establish the existence of a material fact. Moreover, these facts do not contradict evidence presented by the defendants in Novachek's affidavit in which she avers that Sweeney's responsibilities did not include any of the activities related to his relationship with the plaintiff. Furthermore, it is not reasonable to infer that the town enabled Sweeney to maintain his relationship with the plaintiff to include attending car shows, the purchasing of a car and initiating a subsequent stolen car investigation as part of his employment with the public utilities department for the town. The plaintiff has not provided any evidence to refute the evidence presented by the defendants. The plaintiff's mere assertions of fact are insufficient to establish the existence of a material fact. See *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, supra, 263 Conn. 253. Because there is no genuine issue of material fact that Sweeney was not acting within the scope of his employment when performing the tortious acts complained of, the town is not liable for indemnification pursuant to § 7-465 and is, therefore, entitled to summary judgment as a matter of law on count ten.

B

## Counts Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen and Seventeen

Novachek, DiRago and Bruckenthal move for summary judgment on counts eleven, twelve, fourteen and fifteen on the ground that there are no genuine issues of material fact and that they are entitled to summary judgment as a matter of law because these claims are barred by the doctrine of governmental immunity. As to Novachek, the defendants argue in their memorandum of law that at all times, she was clearly performing a public duty within the scope of her employment as first selectwoman for the town, the decision to provide Sweeney with a laptop computer and cellular telephone was discretionary in nature based on a judgment that the devices would facilitate the employee's ability to complete his job functions and that none of the three exceptions to the doctrine of qualified immunity are applicable. As to DiRago and Bruckenthal, the defendants argue that the operation of a police department is a governmental function, the decision to make an arrest or conduct an investigation of a crime is discretionary and, again, none of the three exceptions to the immunity doctrine apply.

In opposition, the plaintiff counters that the claims against Novachek raise genuine issues of material fact with respect to whether the plaintiff is within the identifiable person-imminent harm exception to the governmental immunity doctrine and whether a legal duty of care was owed to her. The plaintiff further argues that (1) evidence exists to show she is an identifiable person because Novachek had notice that Sweeney was contacting her on the town provided cellular telephone and receiving calls; and, (2) she was subject to imminent harm inasmuch as that term has been defined in case law, namely, her relationship with Sweeney was limited

in duration, confined to a limited geographical scope and involved a foreseeably dangerous condition. She also asserts that the known misuse of the Internet and wireless devices imposed a foreseeable risk of harm to innocent third parties and that this knowledge raises disputed issues of fact as to whether the harm suffered by her was foreseeable to charge Novachek with a legal duty of care.

With respect to the counts against DiRago and Bruckenthal, the plaintiff claims that genuine issues of material fact also exist as to whether they were engaged in the performance of a public duty or whether their acts subjected the plaintiff, a clearly identifiable person, to imminent harm. In her memorandum of law, the plaintiff further counters that the police officers are not immune from liability because they performed a private, not a public, duty with respect to their dealings with her by not arresting her if she agreed to return the vehicle to Sweeney.

In deciding whether an action is barred by the doctrine of governmental immunity, "the court looks to see whether there is a public or private duty alleged by the plaintiff." *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 170, 544 A.2d 1185 (1988). "[I]f the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public and not an individual injury, and must be redressed if at all in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it or to perform it properly, is an individual wrong, and may support an individual action for damages." (Internal quotation marks omitted.) Id., 166. "If a public duty exists, an official can be liable only if the act complained of is a ministerial act or one of the narrow exceptions to discretionary acts applies." Id., 170.

"[A]lthough the public duty doctrine provides the starting point of the analysis, distinctions between discretionary acts and ministerial acts are often controlling without regard to whether the duty is ascertained to be public or private." Id. "The doctrine of governmental immunity has provided some exceptions to the general rule of tort liability for municipal employees. [A] municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act." (Internal quotation marks omitted.) *Purzycki* v. *Fairfield*, 244 Conn. 101, 107, 708 A.2d 937 (1998). "Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . On the other hand, ministerial acts are performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action." (Internal quotation marks omitted.) *Gordon* v. *Bridgeport Housing Authority*, supra, 208 Conn. 167–68.

"The immunity from liability for the performance of discretionary acts by a municipal employee is subject to three exceptions or circumstances under which liability may attach even though the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." (Citations omitted.) *Evon* v. *Andrews*, 211 Conn. 501, 505, 559 A.2d 1131 (1989).

## C

### Counts Eleven, Twelve and Thirteen

Any disputed factual issues in the present case are not germane to the defense of governmental immunity.

The plaintiff has alleged that the only exception to governmental immunity applicable to Novachek is the identifiable person-imminent harm exception. The Supreme Court has stated that "the 'discrete person/imminent harm' exception to the general rule of governmental immunity for employees engaged in discretionary activities has received very limited recognition in this state." Id., 507. This exception applies "not only to identifiable individuals but also to narrowly defined identified classes of foreseeable victims." *Burns* v. *Board of Education*, 228 Conn. 640, 646, 638 A.2d 1 (1994).

"In delineating the scope of a foreseeable class of victims exception to governmental immunity, our courts have considered numerous criteria, including the imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim. . . . Other courts, in carving out similar exceptions to their respective doctrines of governmental immunity, have also considered whether the legislature specifically designated an identifiable subclass as the intended beneficiaries of certain acts . . . whether the relationship was of a voluntary nature . . . the seriousness of the injury threatened . . . the duration of the threat of injury . . . and whether the persons at risk had the opportunity to protect themselves from harm." (Citations omitted.) Id., 647–48.

Thus, the plaintiff in the present case must demonstrate that she was not only within a narrowly defined class of foreseeable victims, but also subject to imminent harm. "An individual may be 'identifiable' for purposes of the exception to qualified governmental immunity if the harm occurs within a limited temporal and geographical zone, involving a temporary condition." *Tyron* v. *North Branford*, 58 Conn. App. 702, 710, 755 A.2d 317 (2000). In *Purzycki* v. *Fairfield*, supra, 244 Conn. 110, the Supreme Court interpreted more

expansively the imminent harm requirement, as the plaintiff points out, but still restricted it to cases involving "a foreseeably dangerous condition that [is] limited in duration and geographical scope." "The decisions also make clear . . . that in order to be an identifiable or foreseeable victim, there must be some basis upon which the defendant could have distinguished the plaintiff from other members of the general public." *Gerstenzang* v. *Glenville News & Florist, Inc.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-96-0152839S (March 15, 2001) (*D'Andrea, J.*).

The plaintiff argues that she is an identifiable person inasmuch as Novachek was on notice that Sweeney was contacting her on the town owned cellular telephone because she had called him once while they were out on a date. She also claims that she was subject to imminent harm because her relationship with him was for a short period of time, confined to the town and its surroundings, and placed her financial investment in the car at risk by having failed to have obtained any written agreement regarding the purchase arrangement with Sweeney and legal advice. "The adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society." *Shore* v. *Stonington*, 187 Conn. 147, 157, 444 A.2d 1379 (1982). Viewed in the light most favorable to the plaintiff, the court finds that the facts alleged do not set out the type of dangerous condition that would subject the plaintiff to immediate and significant harm, nor do they distinguish her as an identifiable member of a foreseeable class of victims. Accordingly, the court further finds that the identifiable person-imminent harm exception is not applicable and, therefore, the claim of negligence and negligent infliction of emotional distress against Novachek is barred by the doctrine of governmental

immunity. Summary judgment on counts eleven and twelve[9] is, therefore, granted.

In count thirteen of the complaint, the plaintiff alleges that the town is liable for indemnification under § 7-465 for the negligence of Novachek. The court discussed earlier in part II A concerning count ten that the liability of the town is dependent on and derivative of a finding of negligence on the part of the municipal employee. If there is no finding of negligence on the part of the municipal employee, then no liability attaches to the town. In the present case, because this court has granted summary judgment on counts eleven and twelve, the negligence and negligent infliction of emotional distress claims alleged against Novachek, the town cannot be liable under § 7-465 on count thirteen.

---

[9] Novachek also moves for summary judgment on count twelve, negligent infliction of emotional distress, on the additional ground that the plaintiff has not pleaded, nor can she prove, the essential elements of this cause of action. In their memorandum of law, the defendants argue that the count should be stricken because the complaint does not allege that Novachek knew or should have known that her actions involved an unreasonable risk of causing emotional distress that might result in illness or bodily harm to the plaintiff. The defendants then argue that whether Novachek owed a duty of care to the plaintiff is a question of law and that it is not foreseeable that the harm complained of by the plaintiff would have resulted from any negligence by Novachek because her only duty is to the public; therefore, no genuine issues in dispute exist. The plaintiff counters that a motion to strike, not one for summary judgment, is the proper vehicle to challenge the sufficiency of a claim and that the defendants have waived their right to do so by having filed an answer and special defenses. The plaintiff's reasoning "overlooks the fact that a party that raises legal insufficiency by way of a motion for summary judgment assumes the burden of proving what the material facts are with regard to the sufficiency of the complaint." *Arnone* v. *Connecticut Light & Power Co.*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. X01-CV-98-0168276 (March 22, 2002) (32 Conn. L. Rptr. 58, 60) (*Hodgson, J.*). The defendants have shown that there is no genuine dispute as to the facts and, under the facts, that they are entitled to judgment as a matter of law on the negligent infliction of emotional distress claim alleged by the plaintiff in count twelve. Because the court finds that the doctrine of governmental immunity is dispositive of this claim, it is not necessary to rule on this alternate ground raised by the plaintiff.

Therefore, summary judgment must be granted on count thirteen.

D

Counts Fourteen, Fifteen and Sixteen

The plaintiff claims that issues of fact exist as to whether DiRago and Bruckenthal have qualified immunity and whether the acts complained of fall within the identifiable person-imminent harm exception. "[I]t is firmly established that the operation of a police department is a governmental function, and that acts or omissions in connection therewith ordinarily do not give rise to liability on the part of the municipality." (Internal quotation marks omitted.) *Gordon* v. *Bridgeport Housing Authority*, supra, 208 Conn. 180. "The Superior Court has consistently held that acts or omissions of police officers in the exercise of their duties are discretionary in nature." *Peters* v. *Greenwich*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-95-0147192S (January 2, 2001) (28 Conn. L. Rptr. 671, 674) (*D'Andrea, J.*); *Shaham* v. *Wheeler*, Superior Court, judicial district of Danbury, Docket No. 321879 (March 12, 1998) (*Nadeau, J.*); *Iulo* v. *Milford*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-90-031055S (December 21, 1990) (3 Conn. L. Rptr. 66) (*Fuller, J.*). The Superior Court has also determined that "[t]he investigation of crimes and the decisions to make arrests for them is clearly a discretionary rather than a ministerial function." *Gonzalez* v. *Bridgeport*, Superior Court, judicial district of Fairfield, Docket No. CV-88-253464 (June 4, 1993) (*Fuller, J.*).

The investigation of the stolen car conducted by DiRago and Bruckenthal in which the plaintiff was questioned was in the exercise of their duties and a discretionary, not a ministerial, act to which the defense of governmental immunity attaches. This determination

does not, however, end the court's inquiry. "The immunity from liability for the performance of discretionary acts by a municipal employee is [still] subject to [the] three exceptions . . . ." *Evon* v. *Andrews*, supra, 211 Conn. 505.

The only exception argued by the plaintiff is the identifiable person-imminent harm exception. To come within the parameters of this defense, the plaintiff must establish that she was a person identifiable from the general public in a foreseeably dangerous condition. The undisputed facts do not fulfill this criteria. The vehicle was titled and registered to Sweeney. As the owner of the motor vehicle, he had placed the telephone call to the police department reporting it stolen. As a part of the investigation initiated by that telephone call, the plaintiff was no more of an identifiable person than any member of the general public involved in removing a motor vehicle from the property of the owner. DiRago and Bruckenthal never deprived her of any property by telling her that they would not arrest her if she returned the vehicle to Sweeney. The court finds that there is no genuine issue of material fact that DiRago and Bruckenthal are not entitled to qualified immunity or that the exception of identifiable person-imminent harm is not applicable to any acts and omissions in the conduct of their investigation. As a result, governmental immunity is a bar to the claims of negligence and negligent infliction of emotional distress alleged by the plaintiff. Summary judgment is granted on counts fourteen and fifteen.

In count sixteen of the complaint, the plaintiff alleges that the town is liable for indemnification under § 7-465 for the negligence of DiRago and Bruckenthal. The court previously discussed that the liability of the town is dependent on and derivative of a finding of negligence on the part of the municipal employees. The defendants have moved for summary judgment on count sixteen on

the ground that the plaintiff's claim for indemnification from the town under § 7-465 must fail if summary judgment is granted on the negligence claims against DiRago and Bruckenthal. Because, as discussed previously by this court, the liability of the town is derivative of a finding of negligence on the part of the municipal employees, the town cannot be liable for indemnification under § 7-465 when summary judgment has been granted on the negligence and the negligent infliction of emotional distress claims against DiRago and Bruckenthal. Accordingly, summary judgment must be granted on count sixteen.

E

## Count Seventeen

DiRago and Bruckenthal move for summary judgment on count seventeen on the ground that the alleged civil rights violations under 42 U.S.C. §§ 1983 and 1988[10] are barred by the doctrine of governmental immunity. They argue that they are entitled to qualified immunity because the plaintiff has failed to show that they falsely arrested her, unlawfully detained her, coerced or abused her or deprived her of her right to counsel and property.

---

[10] Section 1983 of title 42 of the United States Code provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

Section 1988 of title 42 of the United States Code provides in pertinent part: "In any action or proceeding to enforce a provision of [§] 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."

In opposition, the plaintiff responds that summary judgment is inappropriate because (1) count seventeen contains more than one cause of action[11] and (2) the two police officers are not entitled to qualified immunity. She argues that because count seventeen includes claims not only for civil rights violations but also for intentional infliction of emotional distress and false arrest, a motion for summary judgment cannot be granted on fewer than all causes of action in a count. The plaintiff also asserts that genuine issues of material fact exist as to whether under the "objective reasonableness" test, there was probable cause to arrest her or she was permitted to use the vehicle, thereby rendering the defense of qualified immunity inapplicable.

"To state a cause of action under § 1983, a plaintiff must allege that a deprivation of federal rights has

[11] In paragraph fifty-seven of count seventeen, the plaintiff alleges that "the defendants subjected [her] to . . . intentional infliction of emotional distress in violation of the laws of the State of Connecticut." Our Supreme Court in *Appleton* v. *Board of Education*, 254 Conn. 205, 757 A.2d 1059 (2000), restated the four necessary elements to establish this claim: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Id., 210.

The court finds that the plaintiff has failed to allege the elements of a negligent infliction of emotional distress claim and, therefore, it is legally insufficient under Connecticut law. In addition, under Practice Book § 10-26, each cause of action is required to be listed in separate counts. Summary judgment has been denied, however, where a plaintiff has pleaded several causes of action in one count, some of which are viable, while others fail to state a claim for which Connecticut law provides relief. *Czahur* v. *Koeller*, Superior Court, judicial district of New Haven, Docket No. CV-01-0456412S (February 14, 2003) (*Harper, J.*). Where, however, none of the claims stated in one count are legally sufficient, summary judgment may be granted as a matter of law. See id. In the present case, in count seventeen, neither the claim for civil rights violations nor intentional infliction of emotional distress states a legally sufficient claim for which relief is available and, therefore, summary judgment can be granted as a matter of law.

occurred under color of any statute, ordinance, regulation, custom or usage." (Citation omitted.) *Tedesco* v. *Stamford*, 215 Conn. 450, 456, 576 A.2d 1273 (1990), on remand, 24 Conn. App. 377, 588 A.2d 656 (1991), rev'd on other grounds, 222 Conn. 233, 610 A.2d 574 (1992). "Police officers are entitled to qualified immunity from civil actions arising from § 1983 claims for discretionary actions. . . . The defense of qualified immunity shields government officials from civil liability if the official's conduct did not violate constitutional rights that were clearly established at the pertinent time or if it was objectively reasonable for the official to believe that the conduct did not violate such rights. . . . As a general rule, police officers are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." (Citations omitted; internal quotation marks omitted.) *Crone* v. *Connelly*, 74 Conn. App. 788, 798–99, 813 A.2d 1084 (2003), aff'd, 267 Conn. 581, 840 A.2d 552 (2004).

"Plaintiffs may not unwrap a public officer's cloak of immunity from suit simply by alleging even meritorious factual disputes relating to probable cause, when those controversies are nevertheless not material to the ultimate resolution of the immunity issue." (Internal quotation marks omitted.) *Ham* v. *Greene*, 248 Conn. 508, 520–21, 729 A.2d 740, cert. denied, 528 U.S. 929, 120 S. Ct. 326, 145 L. Ed. 2d 254 (1999). "The qualified immunity defense is intended to strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." (Internal quotation marks omitted.) *Lee* v. *Sandberg*, 136 F.3d 94, 100 (2d Cir. 1997).

DiRago and Bruckenthal are entitled to qualified immunity if it was objectively reasonable for them to believe that their actions did not violate the constitutional rights of the plaintiff. In determining whether an officer's actions were objectively reasonable, "[t]he court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be construed after the fact." (Internal quotation marks omitted.) Id., 104. Nevertheless, "[a] police officer has acted in an objectively unreasonable manner when no officer of reasonable competence could have made the same choice in similar circumstances." (Internal quotation marks omitted.) Id., 102. DiRago and Bruckenthal had probable cause to detain and arrest the plaintiff for taking the vehicle without Sweeney's permission in violation of General Statutes § 53a-119b.[12] Sweeney was the legal owner of record of the automobile and had called the police department to report the theft of the Chevrolet. The plaintiff was never arrested and was detained only as long as she was questioned as a part of the investigation. The actions of DiRago and Bruckenthal were objectively reasonable to entitle them to qualified immunity. Summary judgment is granted on count seventeen.

## II

## CONCLUSION

The evidence presented by the defendants shows that no material facts are in dispute and that the plaintiff has not established the existence of any disputed material fact with respect to whether Sweeney's actions were

[12] General Statutes § 53a-119b, titled in part, "Using motor vehicle or vessel without owner's permission," provides in relevant part: "(a) A person is guilty of using a motor vehicle without the owner's permission when: (1) He operates or uses, or causes to be operated or used, any motor vehicle unless he has the consent of the owner; or (2) he obtains the consent of the owner to the use of his motor vehicle by fraud or fraudulent means, statement or representations."

not outside the scope of his employment, and that Nova-chek, DiRago and Bruckenthal were not entitled to governmental immunity. The court, therefore, grants summary judgment on counts ten through seventeen.